## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| YOLANDA S. HOLDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-2981 |
| | § | |
| ILLINOIS TOOL WORKS, INC. and | § | |
| VALERON STRENGTH FILMS CO., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Illinois Tool Works ("ITW") has filed a motion for reconsideration of this court's order denying ITW's summary judgment motion. ITW asks this court to reconsider its finding that the plaintiff, Yolanda Holden, did not assert time-barred claims, exhausted her administrative remedies, and established a prima facie showing of sex discrimination, sexual harassment, and retaliation. (Docket Entry No. 31). Based on a careful review of the motion, response, the record, and the applicable law, this court denies ITW's motion for reconsideration. The reasons are set out below.

## I.      Background

Holden sued ITW, alleging a hostile work environment, sex discrimination, and retaliation. She alleged that two coworkers, George Cotton and Reginald Frazier, sexually harassed her by making explicitly sexual offensive comments and gestures and by unwanted

sexual touching.  She alleged that other coworkers, including Jimmy Shelley, Wilbert Barnes, Greg May, and Nate Dawson, sexually harassed her by subjecting her to verbal abuse, repeatedly telling her that the workplace at ITW was "not a woman's place" and that her position was too strenuous for a woman, refusing to train her or training her incorrectly, and sabotaging her work station when her back was turned.  In addition, Holden alleged that she was denied the same kind of overtime and promotion opportunities as her coworkers because of her sex.  She alleged that she complained to her supervisors and to ITW's human resources department, but no corrective action resulted.  Holden also alleged that after she filed a complaint with the EEOC, she was denied training and opportunities for overtime pay and was given unwarranted disciplinary write-ups and poor evaluations.

ITW moved for summary judgment. (Docket Entry No. 10).  This court denied ITW's summary judgment motion, finding that Holden's hostile work environment claim was not time-barred, that Holden's claims did not raise new acts of discrimination that she did not exhaust in her EEOC complaint, and that Holden had shown that a fact issue exists as to whether she suffered an adverse employment action.  ITW now moves for reconsideration on the grounds that this court incorrectly applied the continuing-violation theory in finding that Holden's hostile work environment claim was not time-barred; failed to address cases that ITW asserts support its argument Holden failed to exhaust her administrative remedies; incorrectly found that Holden exhausted her administrative remedies by filing an internal complaint; incorrectly found a fact issue as to the element of causation in Holden's retaliation

claim; and incorrectly relied on *Eberle v. Gonzales*, 240 Fed. Appx. 622 (5th Cir. 2007).

These arguments are addressed separately below.

## II.     The Continuing-Violation Doctrine

### A.     Discrete Acts of Discrimination

ITW argues that the continuing-violation doctrine does not apply to Holden's claims

because Holden experienced discrete acts of discrimination and had "knowledge of the

alleged discriminatory or harassing practices being committed against her in 2003 and 2003."

(Docket Entry No. 31 at 6).  ITW contends that Holden's allegations concerning George

Cotton's conduct "are arguably the worst and most severe allegations in this case" and that

Holden's allegations "against Mr. May and others . . . are also explicit enough that Plaintiff

knew or should have known that she was a victim of alleged discrimination."  (*Id.* at 6).

A Title VII plaintiff may not recover for discrete acts of discrimination that occur

outside the statutory time period.  The Supreme Court has recognized that "hostile

environment claims are different in kind from discrete acts" because "[t]heir very nature

involves repeated conduct" that "occurs over a series of days or perhaps years." *Nat'l R.R.

Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  A single act of harassment

contributing to a hostile environment "may not be actionable on its own." *Id.* (citing *Harris

v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The continuing-violation doctrine allows a

plaintiff to recover for a pattern or policy of discrimination even if some of the alleged

discriminatory conduct fell outside the actionable period, as long as one or more of the

3

related acts occurred within the limitations period.  In examining whether a plaintiff has alleged facts supporting a continuing violation, a court considers the nature of the alleged acts, the frequency of the acts, and whether the acts have a "degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

ITW's argument is not persuasive.  The alleged comments by May and others that Holden was not the person ITW wanted to hire for the job, that Holden's job was too strenuous for a woman, that the laminator position was not a woman's place, or that she should bid for a lower level job so that a man with a family to support could take her position, may evidence discriminatory animus but are not in themselves discrete and separate actionable acts of harassment or discrimination.  The Fifth Circuit has identified discrete acts to be acts that are separately actionable, such as termination, failure to promote, denial of transfer, or refusal to hire.  *See Newton v. Securitas Security Servs., USA, Inc.*, No. 07-10472, 2007 WL 2908651, at *2 (5th Cir. Oct.3, 2007).  The conduct by coworkers that Holden experienced supports applying the continuing-violation doctrine.

This court has already addressed ITW's argument as to George Cotton.  In the December 26, 2007 opinion denying summary judgment, this court found that "[t]o the extent that Holden seeks to assert a claim for sexual harassment based solely on Cotton's conduct,

4

such a claim is time-barred" because Cotton's harassment constituted discrete and actionable acts of discrimination. (Docket Entry No. 30 at 12). The nature of his harassment was such that Cotton's conduct should have triggered Holden's awareness of and duty to assert her rights. To the extent that Cotton's conduct Cotton contributed to Holden's work environment, evidence of this conduct may be considered even if Cotton's acts are not separately actionable. *See Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

### B.     Chronology of Events and Identity of Actors Contributing to a Hostile Work Environment

ITW argues that a sufficiently large time gap exists between the acts of discrimination that Holden alleges she experienced that the continuing-violation doctrine should not apply. ITW focuses on the allegations of physically harassing conduct by George Cotton and Reginald Frazier and contends that the twelve- to eighteen-month gap between their acts "makes the continuing violation theory inapplicable." (Docket Entry No. 31 at 7). ITW also argues that "there was an even longer gap between the alleged incident between Plaintiff and Mr. May and the others whom she alleges discriminated against her when she was hired." (*Id.* at 7). ITW cites several circuit court cases holding that gaps of several years between discriminatory acts do not support a continuing violation. In addition, ITW argues that the continuing-violation theory cannot apply because Cotton and Frazier "could not have been acting in concert." (*Id.* at 10). Citing *Wilson v. Potter*, No. 4:04-CV-00086, 2006 WL

5

2504312 (E.D. Ark Aug. 29, 2006), ITW argues that "[w]hen different supervisors allegedly contribute to the hostile environment, in order to apply a continuing violation doctrine, a plaintiff must show that they acted in concert with a departmental policy." (*Id.* at 9–10). ITW contends that Holden "has not alleged any sort of 'departmental policy'" of harassment. (*Id.* at 10).

ITW fails to point to record evidence showing that Cotton and Frazier were Holden's supervisors. As previously stated, "Holden's allegations in her complaint and the summary judgment evidence she submitted . . . show that her hostile work environment claim arises from the conduct of all her supervisors and coworkers." (Docket Entry No. 30 at 23). Because the record shows that Holden alleges physical harassment and verbal intimidation, threats, and insults during her entire tenure as a laminator at ITW, a gap between the physically harassing conduct of Cotton and Frazier does not make the continuing-violation theory inapplicable. ITW fails to identify with specificity a significant gap between the discriminatory acts that Holden alleges contributed to a hostile work environment, such that the continuing-violation doctrine could not apply.

### C.    Holden's Failure to Allege a Continuing Violation

ITW argues that the continuing-violation doctrine cannot apply to Holden's allegations because she failed to raise such a theory of recovery in her EEOC charge. ITW contends that "[b]oth this Court and courts all over the country have held that a plaintiff's failure to allege the continuing violation theory in her EEOC charge means that the theory

cannot apply." (Docket Entry No. 31 at 10). ITW cites *Stewart v. Houston Lighting &*
*Power Co.*, 998 F. Supp. 746 (S.D. Tex 1998); *Freeman v. Oakland Unified Sch. Dist.*, 291
F.3d 632 (9th Cir. 2002); *Banks v. Metro N. Commuter R.R.*, 234 F.3d 1261 (2d Cir. 2000);
*Creggett v. Wilson*, 114 F.3d 1186 (6th Cir. 1997); *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d
20 (2d Cir. 1985); *Sundaram v. Brookhaven Nat'l Labs*, 424 F. Supp. 2d 545 (E.D.N.Y.
2006); *Waller v. Daimler Chrysler Corp.*, 391 F. Supp. 2d 594 (E.D. Mich. 2005); and
*Hopson v. Dollar Bank*, 994 F. Supp. 332, 338 (W.D. Pa. 1997).

The cases that ITW cites involve plaintiffs who experienced discrete acts of
discrimination but failed to file suit within the 180- or 300-day period required by Title VII.
Courts refused to allow these plaintiffs to bootstrap their claims based on these discrete acts
of discrimination into the statutory time period without alleging a pattern of discriminatory
conduct where at least one discriminatory act occurred within the statutory period. *See, e.g.*,
*Freeman*, 291 F.3d at 638 (finding that plaintiff had failed to allege "a number of
discriminatory acts that suggest a pattern" but had instead alleged only one discrete act);
*Banks*, 234 F.3d 1261, at *1 (finding the plaintiff's claim of a discriminatory failure to
promote to be "time-barred because it is based on conduct that occurred more than 300 days
before [the plaintiff] filed his EEOC charge and [the plaintiff] did not allege the existence of
a 'continuing violation'"); *Creggett*, 114 F.3d 1186, at *1 (finding that the plaintiff had
alleged only wrongful termination in his EEOC charge, but had alleged racial harassment and
failure to promote in his complaint, and affirming the district court's dismissal of the case

7

on the grounds that the plaintiff had failed to exhaust his administrative remedies and "did not allege any nexus between his wrongful termination charge and the new claims that were raised in his complaint"); *Miller*, 755 F.2d at 25–26 (finding that the plaintiff failed to exhaust his administrative remedies as to a claim based on the defendant's failure to rehire and that such a claim could not form a basis for an action based on wrongful termination); *Sundaram*, 424 F. Supp. 2d at 561 (finding that the plaintiff alleged discrete acts of demotion and a failure to promote that did not "support the existence of any such pattern and practice" of discrimination to support a continuing violation); *Waller*, 391 F. Supp. 2d at 600 (finding that the acts described in the EEOC charge "are sufficiently related such that if the last one fell within 300 days, the earlier ones could be considered under a continuing violations theory," but affirming the district court's dismissal of the case because "Plaintiff's EEOC complaint does not allege a discriminatory act within 300 days"); *Stewart*, 998 F. Supp. 746 (finding that the continuing-violation exception did not save the plaintiff's claims for acts that occurred outside the limitations period because they were discrete acts of discrimination); *Hopson*, 994 F. Supp. 332 (finding that a failure to promote is a discrete act of discrimination, such that the continuing-violation exception did not apply and plaintiff's promotion claims were time-barred).

In these cases, the plaintiff either sought to base a continuing-violation theory only on discrete, time-barred acts of discrimination, or failed to allege a pattern of discriminatory conduct that supported a continuing-violation theory. In contrast, Holden has alleged a series

of discriminatory acts, not actionable in and of themselves, that contributed to a hostile work environment.  The continuing-violation theory is not barred.

## III.    Exhaustion of Administrative Remedies

### A.    New Acts of Discrimination

ITW argues that this court failed to address the cases that ITW cited in its summary judgment motion to support its argument that Holden had failed to exhaust her administrative remedies because she alleged new acts of discrimination.  ITW relies on *Cheek v. Peabody Coal Co.*, 97 F.3d 200 (7th Cir. 1996); *Harper v. Godfrey Co.*, 45 F.3d 143 (7th Cir. 1995); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994); *Ray v. Freeman*, 626 F.2d 439 (5th Cir. 1980); *Campbell v. Grayline Air Shuttle, Inc.*, 930 F. Supp. 794 (E.D.N.Y. 1996); *Clemmer v. Enron Corp.*, 882 F. Supp. 606 (S.D. Tex. 1995); and *McGuire v. U.S. Postal Service*, 749 F. Supp. 1275 (S.D.N.Y. 1990).  ITW argues that these cases show that Holden's claims based on alleged conduct by Wilbert Barnes and Greg May are barred because she failed to include them in her EEOC charge.  ITW contends that as to these claims, it "has been denied the entire benefit of the administrative process that Congress created with the EEOC."  (Docket Entry No. 31 at 13).

A lawsuit stemming from EEOC charges "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of

discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1992) (quoting

*Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)); *see Sanchez v.*

*Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (establishing this standard); *see*

*also Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698,

711 (5th Cir. 1994) (citing *Sanchez* with approval); *Haynes v. BlueCross and BlueShield of*

*Texas, Inc.*, No. Civ.A.3:97-CV-2881-R, 2000 WL 140744, *6 (N.D. Tex. Feb. 4, 2000)

("*Sanchez* is clearly the law of the [Fifth] [C]ircuit on this issue.").  "[T]his rule protects

unlettered lay persons making complaints without legal training or the assistance of counsel."

*Fine*, 995 F.2d at 578.  Courts must interpret the scope of an EEOC complaint broadly and

not permit procedural technicalities to obstruct complainants.  *Clark v. Kraft Foods, Inc.*, 18

F.3d 1278, 1280 n.7 (5th Cir. 1994) (citing *Fellows*, 701 F.2d at 452); *Sanchez*, 431 F.2d at

465; *see also Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("[W]e construe

employment discrimination charges with the utmost liberality . . . .") (internal quotations

omitted).

ITW argues that Holden failed to exhaust her administrative remedies as to an alleged

incident in which Barnes threatened and cursed at her and an alleged statement May made,

informing Holden that she was not the person ITW wanted for her position.  Holden's EEOC

charge alleged that ITW "has discriminated against [her] because of [her] sex."  (Docket

Entry No. 10, Ex. A, Attachment 2 at 1).  In the charge, Holden alleged that she was denied

opportunities to work overtime and that other employees and her supervisors told her that she

10

was denied such opportunities because of her sex.  She asserted that when she interviewed for the position, she was asked how she "would respond if male employees did not want [her] working at the Company" because she is a woman.  (*Id.*, Ex. A, Attachment 2 at 1).  When she complained to her supervisor that another employee had turned on a laminator machine while she was working on that machine, the supervisor told her, "This is not a woman's place."  (*Id.*, Ex. A, Attachment 2 at 1).  In the EEOC charge, Holden also alleged that ITW "has knowingly tolerated other employees sexually harassing [Holden]" by making "sexual references and innuendo" and touching her breasts.  (*Id.*, Ex. A, Attachment 2 at 2).

Holden testified in her deposition that Wilbert Barnes was more physically aggressive toward her than he was to other male employees.  (Docket Entry No. 10, Ex. A, Attachment 1 at 244).  As an example, Holden testified that Barnes threatened her and cursed at her when she set up the Laminator 2 machine by herself for the first time.  Because it was her first time operating and setting up the machine alone, it had taken her a little longer "to get the machine up and going."  She requested help from Barnes.  (Docket Entry No. 18, Ex. B at 98).  When she asked for help, he "went to cussing and—he looked at the speed of [the machine]" and began "calling [Holden] all kinds of names," putting his finger in her face and calling her a "motherfucker."  (*Id.*, Ex. B at 97–99.  Holden further alleged that Barnes denied her overtime opportunities and told her to bid down for another job because she was a woman.

Holden also testified that when she began working for ITW, the first remark May made to her was that she "wasn't the person that they wanted to choose for the job." (Docket

11

Entry No. 10, Ex. A, Attachment 1 at 114).  She alleged that May told her several times that she should give her job to a male with a family.  She alleged that on one occasion, May told her that "they was trying to get Scott Hawkins to move [her] to [a position operating] the forklift because he had another guy to come in, said he was married with kids, and he needed that job more than [she] did." (*Id.*, Ex. A, Attachment 1 at 245).  In addition, Holden asserted that May refused to train her, "or if he did train [her], he trained [her] wrong" deliberately. (*Id.*, Ex. A, Attachment 1 at 114).

These allegations about Barnes and May are not of "entirely new acts of unlawful conduct," as ITW argues.  (Docket Entry No. 10 at 13).  Nor do these allegations advance a new theory of liability of which ITW had no notice.  (Docket Entry No. 31 at 13).  Holden's EEOC charge alleged that she suffered hostility and disparate treatment from her coworkers because she was a woman.  The allegations in her EEOC charge are both like and related to her claims of a hostile work environment and sex discrimination based on Barnes' and May's conduct.  May's EEOC charge alleges that when she was hired, she learned that male employees did not want a woman working at ITW; that her performance was unfairly criticized; that she was discriminated against in overtime opportunities and promotions.  *See Fine*, 995 F.2d at 577–78 (noting that a litigant may raise claims in her federal complaint based on any kind of discrimination like or related to the complaints in her EEOC charge).

The cases that ITW cites are distinguishable because they involve plaintiffs who, unlike Holden, attempted to assert new claims in litigation that their EEOC charges did not

12

encompass.  *See, e.g.*, *Harper*, 45 F.3d 143 (EEOC charge alleged disparate termination; lawsuit also alleged disparate treatment in seniority evaluation); *W. & S. Life Ins. Co.*, 31 F.3d 497 (EEOC charge alleged that plaintiff was forced to pay client's insurance premiums because of her sex; lawsuit alleged disparate treatment in job and project opportunities); *Campbell*, 930 F. Supp. 794 (EEOC charge alleged demotion; lawsuit added claim for decrease in work hours and withholding of necessary equipment and work space); *McGuire*, 749 F. Supp. 1275 (EEOC charge alleged failure to promote and harassment based on age; lawsuit added claim for discriminatory termination).   The incident in which Barnes threatened and cursed at Holden and May's statement that she was not the person ITW wanted for the job do not represent new acts of discrimination, the investigation of which would not reasonably grow out of Holden's assertion of sex discrimination and hostility from her coworkers.  *See Sanchez*, 431 F.2d at 466.

In addition, by including allegations of sexually harassing conduct by Barnes and May in her complaint, Holden does not attempt to assert new theories of recovery.  *See Peabody Coal Co.*, 97 F.3d 200 (EEOC charge alleged disparate discipline and benefits; lawsuit added claim for sexual harassment); *Clemmer*, 882 F. Supp. 606 (EEOC charge alleged age discrimination; in litigation, plaintiff moved to amend complaint to add claims for discrimination based on sex and disability and violation of the Rehabilitation Act).  Nor does Holden attempt to recover for discriminatory acts by Barnes and May that occurred after she

filed her EEOC charge. *See Ray*, 626 F.2d 439 (lawsuit sought to recover for discriminatory acts that occurred after plaintiff filed EEOC charge).

The conduct by Barnes and May is like and related to the conduct about which Holden complained in her EEOC charge. It was not necessary for Holden to file an additional EEOC charge as to Barnes's and May's conduct.

### B.   Exhaustion of Administrative Remedies

ITW argues that this court incorrectly found that Holden's "filing of an internal complaint constituted an exhaustion of administrative remedies," such that her discrimination claims are barred. (Docket Entry No. 31 at 13). ITW misinterprets this court's opinion. In its summary judgment reply, ITW argued that Holden's claims based on ITW's failure to promote her were barred because she had failed to exhaust her administrative remedies. (Docket Entry No. 22 at 19). This argument was not persuasive. The record shows that Holden met with Virginia McDonough and Scott Hawkins on June 24, 2005 to discuss the problems she was experiencing on her shift. After this meeting, McDonough, Hawkins, Kevin Clothier, and Ron Luce told Holden that could not advance in her job position but instead would have to retrain for the Laminator Operator position from the entry level—that she "had to go all the way back to the bottom and start up." (Docket Entry No. 18, Ex. B at 202). If she did not retrain back to her original level "within a certain length of time . . . they were going to cut [her] pay." (*Id.*, Ex. B at 202). Holden filed her EEOC charge on July 8, 2005, alleging that she has been denied job opportunities because of her sex. The Fifth

14

Circuit has acknowledged that an employer's decision to change an employee's job position may constitute a demotion if the new position is objectively worse. *Greene v. DaimlerChrysler Servs. of N. Am.*, 128 Fed.Appx. 353, 357 (5th Cir. 2005) (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)). In addition, "[it] has been clearly recognized that a failure to promote can be an adverse employment action under the *McDonnell Douglas* framework." *McNealy v. Emerson Elec. Co.*, 121 Fed. Appx. 29, 33 (5th Cir. 2005).

The court concluded that there were disputed fact issues as to whether ITW refused to promote Holden or demoted her. The chronology of events was not described not to show that Holden had exhausted her administrative remedies by making an internal complaint to McDonough and Hawkins, but that this alleged failure to promote or demotion had occurred before Holden filed her EEOC charge. In that charge, Holden alleged that she had been denied job opportunities and suffered discrimination because of her sex. As a result, this court found that Holden's promotion claim was not barred due to a failure to exhaust her administrative remedies.

### C.    Exhaustion of Retaliation Complaint

ITW argues that this court erred in relying on *Eberle v. Gonzales*, 240 Fed. Appx. 622, 628 (5th Cir. 2007), to find that Holden had exhausted her administrative remedies as to her retaliation claim. ITW distinguishes *Eberle* on the ground that the plaintiff filed a lawsuit alleging not only discrimination but also retaliation based on acts that occurred before he

filed his EEOC charge.  The Fifth Circuit dismissed the plaintiff's retaliation claim because he failed to exhaust his administrative remedies.  ITW asserts that it "did not raise this issue in its Motion for Summary Judgment" and that this court's reliance on *Eberle* "is an error of law."  (Docket Entry No. 31 at 16).

ITW's argument relies on a misreading of this court's opinion and of *Eberle*.  ITW argued in its summary judgment reply that because Holden filed her EEOC charge in July 2005, "she cannot state a claim regarding any actions taken in 2006 because she has failed to exhaust her administrative remedies."  (Docket Entry No. 22 at 21).  Relying on *Eberle*, this court found that it was not necessary for Holden to file another EEOC charge to allege a claim for retaliation after she filed her EEOC charge in July 2005.  ITW correctly points out that in *Eberle*, the Fifth Circuit dismissed the plaintiff's retaliation claims for failure to exhaust administrative remedies.  The plaintiff alleged only discrimination in his EEOC charge and in litigation sought to recover for both discriminatory and retaliatory acts that had occurred before he filed his EEOC charge.  This court relied on *Eberle* not for its facts, but for its statement of law.  In *Eberle*, the Fifth Circuit distinguished the facts of that case from those of an earlier case, *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981), in which the court found:

> [I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge . . . .  It is in the nature of retaliation claims that they arise after the filing of the EEOC charge.  Requiring prior resort to the EEOC would mean that two charges would have to

16

> be filed in a retaliation case, a double filing that would serve no
> purpose except to create additional procedural technicalities.

*Eberle*, 240 Fed. Appx. at 628 (citing *Gupta*, 654 F.2d at 414).  In *Gupta*, the plaintiff filed

an EEOC charge alleging discrimination and subsequently filed suit.  While the lawsuit was

pending, the plaintiff was informed that his employment contract would not be renewed the

following year.  He sought to assert a claim for retaliatory discharge in his lawsuit.  The Fifth

Circuit found that the plaintiff did not need to file an additional EEOC charge alleging

retaliation to exhaust administrative remedies as to that claim.

Under the standard established in *Gupta* and reaffirmed in *Eberle*, it was not necessary

for Holden to file an additional EEOC charge to exhaust her administrative remedies for

claims based on retaliatory acts that occurred in 2006.  In addition, Holden alleged retaliation

in her EEOC charge and has exhausted her administrative remedies for claims based on

retaliatory acts that occurred before she filed the charge.

**IV.   Holden's Prima Facie Showing of Discrimination and Retaliation**

**A.     A Materially Adverse Employment Action**

ITW argues that this court erred in finding that Holden presented evidence of a

materially adverse employment action.  ITW argues that Holden did not present any evidence

showing "that ITW actually denied her the position of L-4 Laminator Operator."  (Docket

Entry No. 31 at 14).  ITW contends that Holden testified that Don Martin "had in fact started

training her for the position," and that she "never completed such training because she

voluntarily bid for and accepted a different job." (*Id.* at 14). ITW also argues that Holden stated in her deposition that she was only "threatened with a pay cut" and "never claim[ed] that she actually received a pay cut." (*Id.* at 14). Similarly, ITW argues that Holden failed to show that she was denied opportunities to work overtime. ITW contends that Holden's "percentage of overtime hours worked actually increased each year from 2004 to 2006, direct evidence contradicting Plaintiff's groundless allegation that she received fewer overtime opportunities." (*Id.* at 15). Lastly, ITW argues that even if a fact issue exists as to whether Holden received unwarranted write-ups because of her complaints, "written corrective action notices do not constitute materially adverse employment actions as a matter of law." (*Id.* at 15).

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2007)). "[It] has been clearly recognized that a failure to promote can be an adverse employment action under the *McDonnell Douglas* framework." *McNealy*, 121 Fed. Appx. at 33. The Fifth Circuit has also acknowledged that an employer's decision to change an employee's job position may constitute a demotion if the new position is objectively worse. *Greene*, 128 Fed.Appx. at 357 (citing *Sharp*, 164 F.3d at 933).

The record shows disputed fact issues as to whether ITW refused to promote Holden or demoted her. As noted, after meeting with McDonough and Hawkins on June 24, 2005

18

to discuss the problems she was experiencing with her team, McDonough, Hawkins, Kevin Clothier, and Ron Luce told Holden that not only could she not advance in her job position, but she was also required to retrain for the Laminator Operator position from the entry level—that she "had to go all the way back to the bottom and start up." (Docket Entry No. 18, Ex. B at 202). If she did not retrain back to her original level "within a certain length of time . . . they were going to cut [her] pay." (*Id.*, Ex. B at 202). The critical issue is not whether Holden was threatened with a pay cut, as ITW emphasizes, but whether she was effectively demoted. Holden's testimony creates a fact issue on this point. In addition, Holden testified in her deposition that although she was more skilled and knowledgeable about the laminator machine than Wilbert Barnes and Jimmy Shelley, Barnes and Shelley were promoted and she was not. Holden testified in her deposition that she "was up for a promotion to start training for a Level 4 [Laminator Operator position]" but was never allowed to progress beyond the Laminator Operator Level 3 position, even though she had "already passed [her] criteria." (Docket Entry No. 18, Ex. B at 201–04). Considered in the light most favorable to Holden, the record shows that a fact issue exists as to whether ITW failed to promote Holden or demoted her.

As to Holden's overtime compensation claims, the Fifth Circuit has acknowledged that decisions that affect compensation may constitute actionable adverse employment actions in sex discrimination cases. *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 397 (5th Cir. 2002). ITW contends that the percentage of overtime hours that Holden worked

19

increased each year, contradicting Holden's assertion that "she received fewer overtime opportunities." (Docket Entry No. 31 at 15). The issue is not whether Holden received "fewer overtime opportunities" as an absolute matter, but whether she received fewer overtime opportunities than her similarly situated male coworkers. Holden testified in her deposition that she was consistently denied opportunities to earn overtime during the course of her employment as a Laminator Operator that her male coworkers did receive, resulting in reduced compensation. A fact issue exists as to whether she was discriminatorily denied overtime work and compensation.

ITW's argument that disciplinary actions do not constitute materially adverse employment actions confuses Holden's discrimination claim with her retaliation claim. The elements of a *prima facie* retaliation claim are that the plaintiff engaged in protected conduct, that she subsequently suffered an adverse employment action, and that the adverse employment action was taken in response to her protected conduct. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004) (citing *Chaney v. New Orleans Pub. Facility Mgmt, Inc.*, 179 F.3d 164, 167 (5th Cir. 1999)). In *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006), the Supreme Court held that the antiretaliation provision of Title VII is not limited to ultimate employment actions. The provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414. Holden has raised a fact issue as to whether she received unwarranted disciplinary write-ups in retaliation for filing her EEOC charge.

20

### B.    Retaliation

ITW argues that this court improperly found a fact issue as to whether Holden received unwarranted disciplinary write-ups in retaliation for the filing of her EEOC charge based on the temporal proximity of the write-ups to the date of her EEOC charge.  ITW cites several Fifth Circuit cases finding that temporal proximity alone is insufficient to prove the element of causation in a retaliation claim and argues that Holden "has nothing other than temporal proximity to support the causation element of her retaliation claim." (Docket Entry No. 31 at 15).

Holden raised a fact issue as to whether she experienced retaliation—including poor job evaluations, unwarranted disciplinary write-ups, on-the-job harassment, and denial of overtime work—because she complained about sexual harassment and filed an EEOC charge.  As the Supreme Court noted in *Burlington*, "the significance of an alleged act of retaliation depends upon the particular circumstances of the individual employee.  Context matters." *Burlington*, 126 S.Ct. at 2414.  The record shows that Holden's coworkers were aware of her complaints to ITW's human resources department and of her EEOC charge. She testified that when she made a complaint to Scott Hawkins, "Scott would say something to Jimmy about what was going on the floor.  Jimmy would tell everybody what Scott had said . . . [a]nd Jimmy Shelley turned around and told me that if I didn't quit complaining, that they was going to ship my—ship me back to East Texas." (Docket Entry No. 18, Ex. B at 189).  Holden alleges that after she made complaints and filed her EEOC charge, her

21

coworkers harassed her, denied her opportunities to work overtime, gave her poor job evaluations and unnecessary write-ups, and sabotaged her machine when she stepped away from her station.   When asked about examples of retaliation, Holden testified that she received unnecessary disciplinary actions, including a write-up from Eric Richardson for not following work instructions.   Holden further testified that Richardson harassed her about her EEOC charge.   The conversations she had with Richardson about her EEOC charge "made [her] so uncomfortable [she] called the EEOC and complained to the EEOC about him confronting [her]."   (*Id.*, Ex. B at 242).   Holden has alleged more than temporal proximity to support her retaliation claim.   The record shows that fact issues exist as to whether Holden suffered retaliation as a result of her complaints to ITW management about discriminatory treatment and the filing of her EEOC charge.

## IV.   Conclusion

ITW's motion for reconsideration is denied.

SIGNED on January 18, 2008, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge